Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**
**TWENTY FIRST JUDICIAL CIRCUIT**

SCOTTSDALE INSURANCE COMPANY, PACIFIC INSURANCE COMPANY, LTD., AND TALBOT UNDERWRITING LTD., as assignees of SCHNUCK MARKETS, INC.

Plaintiffs,

v.

BOAR'S HEAD PROVISION CO., INC.

Defendant.

Case No.:

Case Type: Breach of Contract

**JURY TRIAL DEMANDED**

**<u>PETITION</u>**

COME NOW Plaintiffs, SCOTTSDALE INSURANCE COMPANY, PACIFIC INSURANCE COMPANY, LTD., AND TALBOT UNDERWRITING LTD., as assignees of SCHNUCK MARKETS, INC. ("Plaintiffs"), by and through their undersigned counsel, COZEN O'CONNOR, and for their Petition against BOAR'S HEAD PROVISION CO., INC. ("Boar's Head"), state and allege with respect as follows:

**<u>NATURE OF THE ACTION</u>**

1. This recovery action arises from a large multi-state outbreak of listeriosis infections caused by contaminated deli meat manufactured by Defendant Boar's Head, and subsequently stored, sliced, and sold at a variety of retail grocery store locations, including Plaintiffs' insured, Schnuck Markets, Inc. ("Schnucks").

2. At all relevant times, Schnucks exclusively sold Boar's Head deli meat, including liverwurst and other meats, as its premium meat brand at the deli counters within its grocery store chain, comprised of approximately 115 stores located primarily in the midwestern States of Missouri and Illinois.

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

3. In July of 2024, Defendant Boar's Head initiated a nationwide recall of "Boar's Head" brand liverwurst that was stored, cut, and sold by Defendant Schnucks (the "recall"). This recall was eventually expanded to include many other meats. The recalled deli meat was grossly contaminated with the outbreak strain of the deadly foodborne pathogen *Listeria monocytogenes*.

4. The recall required Schnucks to pull all contaminated meats and cheeses from its shelves and shut down its deli counters for a period ranging from five days to two weeks depending on the location due to a lack of available premium meat products from Boar's Head.

5. This recall and loss of Boar's Head production facilities led to the loss of significant sales and lost profits at Schnucks' deli counters across its chain of stores due to a complete lack of available inventory from its exclusive supplier.

6. As a result of, and immediately following the recall, Boar's Head's brand and reputation were significantly tarnished. This was due to the nature, severity, and widespread and publicly visible consequences of the recall, including the tragic death of at least 10 consumers of its products, and many other consumers who were sickened eating Boar's Head meat – including at least one Schnucks' customer who sued Schnucks and Boar's Head as a result of her injuries from eating contaminated Boar's Head meat.

7. Schnucks' customers were rightly and gravely concerned about purchasing Boar's Head meat and other meats and cheeses found in the deli counter due to a concern of cross-contamination under the circumstances

8. This lead to a significant decline in customers purchasing premium meats from Schnucks from July through early December 2024 – even after Boar's Head was able to resume supplying meats to Schnucks.

9. During this several month period after Boar's Head's meat was able to be sold to

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

Schnucks again, it began to see significant decreases in foot traffic, and decreased revenue and margins due to its association with the Boar's Head brand.

10. This left Schnucks with a dilemma regarding its exclusive deli meat vendor for its premium meats: stick with Boar's Head despite the significant reputational harm associated with Boar's Head due to the recall, or expand its offering to include new premium meat vendors alongside Boar's Head.

11. By mid-October 2024, Boar's Head rejected Schnucks' proposal to allow its premium meats to be sold alongside other premium meat brands at Schnucks' deli counters. As a result, Boar's Head terminated its supply agreement with Schnucks and refused to sell any further meat to Schnucks as of early December, 2024.

12. Between mid-October 2024 and early December, 2024, Schnucks began converting the vendor and source of its premium meats from Boar's Head to vendor Dietz & Watson.

**PARTIES**

13. Plaintiff, Scottsdale Insurance Company, is an insurance company with its principal place of business located at One Nationwide Plaza, in Columbus, Ohio, and at all times relevant was authorized to issue policies of insurance in the State of Missouri.

14. Plaintiff, Pacific Insurance Company, Ltd., is an insurance company with its principal place of business located at 3909 North 16th Street, in Phoenix, Arizona, and at all times relevant was authorized to issue policies of insurance in the State of Missouri.

15. Plaintiff, Talbot Underwriting Ltd., is an insurance company with its principal place of business located at The AIG Building, 58 Fenchurch Street, London, England, EC3M 4AB, and at all times relevant was authorized to issue policies of insurance in the State of

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

Missouri.

16. Defendant Boar's Head is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1819 Main St., Suite 800, Sarasota, Florida, 34236.

17. Defendant Boar's Head's registered agent for service is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

18. At all relevant times, Boar's Head was in the business of sourcing, manufacturing, processing, labeling, distributing, and selling deli meat products to customers through various grocery store chains in Missouri and throughout the country.

19. Plaintiffs' insured, Schnucks, is a corporation organized under the laws of the state of Missouri with its principal place of business located at 11420 Lackland Rd., St. Louis, Missouri, 63146.

20. At all relevant times, Schnucks was in the grocery business, including the purchasing, marketing, storage, processing, packaging, labeling, and selling deli meats.

**JURISDICTION AND VENUE**

21. Jurisdiction and venue are properly laid in this State and this County based on the following:

a. The cause of action arose in this State and this County because Schnucks entered into an agreement to purchase meat products from Boar's Head, and Plaintiffs suffered the claimed damages in this jurisdiction as a result of the contaminated meat products sold to Schnucks in this State and County; and

b. Boar's Head regularly conducts business within this state by advertising, shipping, and selling its products to Plaintiffs' insured here.

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

## FACTS COMMON TO ALL COUNTS

22. Listeriosis is a serious illness resulting from consumption of food contaminated with the bacteria *Listeria monocytogenes*.

23. *Listeria monocytogenes* is one of the most virulent and deadly foodborne pathogens with a fatality rate of over twenty percent. Virtually all people who contract listeriosis require hospitalization. Those who are elderly, immune-compromised, or pregnant are particularly vulnerable.

24. The bacteria can be killed by cooking or pasteurizing food products; however, contact with *Listeria monocytogenes* after such a “killstep” will re-contaminate the food product.

25. This risk is heightened because *Listeria monocytogenes* tends to thrive in food processing environments, particularly in floor drains and other cool damp areas. Moreover, *Listeria monocytogenes* can easily be transferred from one area of a processing facility to another through, for example, simple touching of equipment, water, mist, or on workers, their clothes, shoes and hands.

26. Additionally, in contrast to most other harmful bacteria, *Listeria monocytogenes* will grow slowly on foods stored in a refrigerator, and freezing has very little detrimental effect on the organism.

27. These characteristics render ready-to-eat deli meats particularly susceptible to *Listeria monocytogenes* contamination.

28. Indeed, the regulations of the United States Department of Agriculture have adopted a “zero tolerance” policy for *Listeria monocytogenes* in ready-to-eat meat products, including deli meats. This means that any amount of the bacteria in deli meats renders them adulterated within the meaning of the United States Food Drug and Cosmetic Act.

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

29. Responsible manufacturers of deli meat therefore maintain and follow strict hygienic practices in their processing facilities, and implement robust environmental and product testing programs to prevent the contamination of either their products or processing facilities with *Listeria*.

30. Because of the risks posed by *Listeria monocytogenes,* the Centers for Disease Control and Prevention ("CDC"), in collaboration with state public health officials, actively monitor listeriosis cases throughout the country.

31. State and CDC labs routinely subject samples of *Listeria monocytogenes* obtained from sickened individuals to a genetic subtyping process known as Whole Genome Sequencing (WGS). The results—akin to genetic fingerprints—are then loaded to a national database used to determine whether the illnesses were caused by a common genetic strain of *Listeria monocytogenes*.

32. Through this system, the CDC detected a unique genetic pattern of *Listeria monocytogenes* by WGS among listeriosis patients in June and July of 2024.

33. As of July 26, 2024, the CDC and United States Department of Agriculture Food Safety Inspection Service had identified 34 people from thirteen states who had contracted this unique strain of *Listeria monocytogenes* (hereafter "Outbreak Strain"). Thirty-Three of the outbreak victims were hospitalized and two died from their infections.

34. As part of the investigation, CDC, state, and local public health officials conducted an extensive epidemiological investigation to determine the source of the Outbreak Strain.

35. In conjunction with the outbreak investigation, the Maryland Department of Health received a positive test for *Listeria monocytogenes* from an unopened package of Boar's Head liverwurst.

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

36. On July 26, 2024 Boar's Head recalled all liverwurst products produced between June 11, 2024 and July 17, 2024, at its Jarratt, Virginia production facility. Boar's Head also recalled several other meat products produced at the Jarratt, Virginia facility.

37. These recalled meat products had been sold to Schnucks at its various grocery store locations and had already been paid for by Schnucks by the time the recall was initiated.

38. After the recall, Boar's Head directed Schnucks to dispose all contaminated meat products that had been delivered to the various Schnucks grocery store locations.

39. Boar's Head thereafter credited Schnucks for the value of all contaminated products it sold to Schnucks that had to be disposed of as part of the recall.

40. Put another way, Boar's Head accepted its fault and responsibility for selling contaminated product to Schnucks that had to be disposed of due to the recall by crediting Schnucks back for the amounts they paid for selling Schnucks contaminated goods in the first place.

41. That as a direct and proximate result of the recall, Schnucks incurred financial losses and damages as a result of lost profits, lost revenues from declining customer traffic, increased costs from switching vendors, and reputational harm associated with selling Boar's Head meat – all of which Boar's Head has refused to reimburse it for.

42. As a direct and proximate result of the recall that produced significant financial losses for Schnucks, Schnucks submitted a claim to its insurers, Plaintiffs, and Plaintiffs, pursuant to their policy of insurance with Schnucks, paid Schnucks an amount in excess of $1,500,000 for the financial losses it suffered as a result of the recall.

43. After Plaintiffs paid Schnucks for its losses, Schnucks assigned all rights, claims and interests which Schnucks has or may have against any person, entity, or corporation liable for

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

the subject loss, to Plaintiffs, and further authorized Plaintiffs to sue, compromise or settle any and all such claims. A copy of the Assignment is attached as Exhibit A.

**FIRST CAUSE OF ACTION**

**(Breach of Implied Warranties under the Uniform Commercial Code)**

44. Plaintiffs incorporate by reference and reallege paragraphs 1-43 set forth above.

45. Boar's Head expressly and impliedly warranted that its food products were merchantable and fit for the particular purpose of human consumption pursuant to the Uniform Commercial Code, RSMo 400.2-314 and RSMo 400.2-315.

46. Defendant Boar's Head's liverwurst and other meat products contained *Listeria* and therefore was not merchantable, were not fit for human consumption, and were injurious to health.

47. As a direct and proximate result of Defendant Boar's Head's acts and omissions, Plaintiffs suffered lost profits, increased costs, and reputational damages for which they seek reimbursement from Boar's Head.

WHEREFORE, Plaintiffs pray for judgment against Defendant, as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**(Breach of Contract)**

48. Plaintiffs incorporate by reference and reallege paragraphs 1-43 set forth above.

49. Schnucks entered into a written contract for the supply of premium meats to its grocery stores pursuant to the attached terms and conditions of their purchase order. A true and correct copy of the Contract is attached hereto as Exhibit B.

50. Schnucks tendered this purchase order to Boar's Head and Boar's Head accepted these terms and conditions by performing under the contract for several years without objecting to

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

or negotiating different terms.

51. Schnucks satisfied all of the terms and conditions of its contract with Boar's Head.

52. Boar's Head breached its agreement with Schnucks by failing to provide the premium quality meat products it agreed to.

53. Boar's Head's material breach of the contract resulted in lost profits and reputational harm to Schnucks.

54. The contract also contains an attorneys' fees provision for the prevailing party in the event of a breach of the contract. To the extent Plaintiffs prevail in this action, they assert their right to recover reasonable attorneys' fees and costs as a result of Boar's Head's material breaches of the contract.

55. Defendant Boar's Head's liverwurst and other products contained *Listeria* and therefore was not merchantable, was not fit for human consumption, and was injurious to health, in direct breach of the terms and conditions of the Purchase Order entered into between Schnucks and Boar's Head.

56. As a direct and proximate result of Defendant Boar's Head's material breaches of contract, Schnucks suffered lost profits, lost revenue, increased costs, and reputational harm to its business.

57. Schnucks sought reimbursement from Boar's Head for these damages but Boar's Head has refused, and continues to refuse, to reimburse it for the damages it caused.

WHEREFORE, Plaintiffs pray for judgment against Defendant, as hereinafter set forth.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues which may be tried by a jury.

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs pray for a judgment against Defendant for a fair and reasonable amount in excess of twenty-five thousand dollars ($25,000.00), for pre-judgment interest, attorneys' fees, and for their costs expended herein and for such other and further relief as this Court deems just and proper under the circumstances, including the following to be proven at trial:

1) Damages due to its breach of these implied warranties;
2) Damages due to its material breach of contract;
3) Lost profits due to decreased sales as a result of breaching these implied warranties;
4) Lost revenue due to decreased sales as a result of breaching these implied warranties;
5) Increased costs incurred as a result of breaching its implied warranties and the contract;
6) Reputational damages resulting from the recall and as a result of breaching these implied warranties; and
7) An award of reasonable attorneys' fees and costs pursuant to Schnucks' contract with Boar's Head.

November 5, 2025

Respectfully submitted,

SCOTTSDALE INSURANCE COMPANY,
PACIFIC INSURANCE COMPANY, LTD.,
AND TALBOT UNDERWRITING LTD., as
assignees of SCHNUCK MARKETS, INC.,

By: /s/ Marisa L. Saber
One of Their Attorneys

Marisa L. Saber (Bar #60360)
Matthew F. Policastro (PHV to be filed)
COZEN O'CONNOR

Electronically Filed - St Louis County - November 05, 2025 - 03:21 PM

123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel: (312) 382-3100
Fax: (312) 382-8910
Email: msaber@cozen.com
mpolicastro@cozen.com

COUNSEL FOR PLAINTIFFS